**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARENDI S.A.R.L., | |
| Plaintiff, | |
| v. | C.A. No. 12-1595-LPS |
| LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., and LG ELECTRONICS MOBILECOMM U.S.A., INC., | |
| Defendants. | |
| ARENDI S.A.R.L., | |
| Plaintiff, | |
| v. | C.A. No. 12-1597-LPS |
| BLACKBERRY LIMITED and BLACKBERRY CORPORATION, | |
| Defendants. | |
| ARENDI S.A.R.L., | |
| Plaintiff, | |
| v. | C.A. No. 12-1601-LPS |
| MOTOROLA MOBILITY LLC f/k/a MOTOROLA MOBILITY, INC., | |
| Defendant. | |

| | |
|---|---|
| ARENDI S.A.R.L.,<br><br>        Plaintiff,<br><br>    v.<br><br>SONY MOBILE COMMUNICATIONS (USA) INC., f/k/a SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC., SONY CORPORATION, and SONY CORPORATION OF AMERICA,<br><br>        Defendants. | C.A. No. 12-1602-LPS |
| ARENDI S.A.R.L.,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        Defendant. | C.A. No. 13-919-LPS |
| ARENDI S.A.R.L.,<br><br>        Plaintiff,<br><br>    v.<br><br>OATH HOLDINGS INC. and OATH INC.,<br><br>        Defendants. | C.A. No. 13-920-LPS |

Neal C. Belgam and Eve H. Ormerod, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, DE
Seth Ard, Beatrice Franklin, and Max Straus, SUSMAN GODFREY, LLP, New York, NY
John Lahad, Ibituroko-Emi Lawson, Robert Travis Korman, and Brenda Adimora, SUSMAN GODFREY, LLP, Houston, TX
Kalpana Srinivasan, SUSMAN GODFREY, LLP, Los Angeles, CA
Kemper Diehl, SUSMAN GODFREY, LLP, Seattle, WA

> *Attorneys for Plaintiff*

Jeremy D. Anderson, FISH & RICHARDSON P.C., Wilmington, DE
Steven R. Katz and Jacob Pecht, FISH & RICHARDSON P.C., Boston, MA
R. Andrew Schwentker, FISH & RICHARDSON P.C., Washington DC
Eda Stark, FISH & RICHARDSON P.C., Atlanta, GA

> *Attorneys for Defendants LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc.*

Kenneth L. Dorsney and Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE
Brian C. Riopelle and David E. Finkelson, MCGUIREWOODS LLP, Richmond, VA
Jason W. Cook, MCGUIREWOODS LLP, Dallas, TX

> *Attorneys for Defendants BlackBerry Limited and BlackBerry Corporation*

David E. Moore, Bindu A. Palapura, and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE
Robert W. Unikel, Michelle Marek Figueiredo, John Cotiguala, and Matt Lind, PAUL HASTINGS LLP, Chicago, IL
Robert R. Laurenzi, PAUL HASTINGS LLP, New York, NY
Ariell Bratton, PAUL HASTINGS LLP, San Diego, CA
Ginger Anders, MUNGER, TOLLES & OLSON LLP, Washington, DC

> *Attorneys for Defendant Motorola Mobility LLC f/k/a Motorola Mobility, Inc.*

Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
Jeffri A. Kaminski, Justin E. Pierce, and Calvin R. Nelson, VENABLE LLP, Washington, DC
Neha Bhat, VENABLE LLP, New York, NY

> *Attorneys for Defendants Sony Mobile Communications (USA) Inc. f/k/a Sony Ericsson Mobile Communications (USA) Inc., Sony Corporation, and Sony Corporation of USA*

David E. Moore, Bindu A. Palapura, and Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE
Robert W. Unikel, Michelle Marek Figueiredo, John Cotiguala, and Matt Lind, PAUL HASTINGS LLP, Chicago, IL
Robert R. Laurenzi and Chad J. Peterman, PAUL HASTINGS LLP, New York, NY
Ariell Bratton, PAUL HASTINGS LLP, San Diego, CA
Ginger Anders, MUNGER, TOLLES & OLSON LLP, Washington, DC

*Attorneys for Defendant Google LLC*

Jack B. Blumenfeld, Brian P. Egan, and Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE
Frank C. Cimino Jr., Megan S. Woodworth, Jeffri A. Kaminski, Calvin R. Nelson, and Neha Bhat, VENABLE LLP, Washington, DC

*Attorneys for Defendants Oath Holdings Inc. and Oath Inc.*

## MEMORANDUM OPINION

REDACTED PUBLIC VERSION (ISSUED April 8, 2022)
March 31, 2022
Wilmington, Delaware



**STARK, U.S. Circuit Judge:**

On November 29, 2012 and May 22, 2013, Plaintiff Arendi S.A.R.L. ("Plaintiff" or

"Arendi") initiated 10 patent infringement cases against a series of defendants ("Defendants").

These cases and the corresponding defendant(s) in each case are listed below:

- C.A. No. 12-1595 (the "*LG* Action"): LG Electronics Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc. (collectively, "LG");

- C.A. No. 12-1596 (the "*Apple* Action"): Apple Inc. ("Apple");

- C.A. No. 12-1597 (the "*BlackBerry* Action"): BlackBerry Limited and BlackBerry Corporation (collectively, "BlackBerry");

- C.A. No. 12-1598 (the "*Samsung* Action"): Samsung Electronics Co. Ltd., Samsung Electronics America Inc., and Samsung Telecommunications America LLC (collectively, "Samsung");

- C.A. No. 12-1599 (the "*Microsoft Mobile* Action"): Microsoft Mobile, Inc. ("Microsoft Mobile");

- C.A. No. 12-1600 (the "*HTC* Action"): HTC Corporation ("HTC");

- C.A. No. 12-1601 (the "*Motorola* Action"): Motorola Mobility LLC f/k/a Motorola Mobility, Inc. ("Motorola");

- C.A. No. 12-1602 (the "*Sony* Action"): Sony Mobile Communications (USA) Inc. f/k/a Sony Ericsson Mobile Communications (USA) Inc., Sony Corporation, and Sony Corporation of USA (collectively, "Sony");

- C.A. No. 13-919 (the "*Google* Action"): Google LLC ("Google");

- C.A. No. 13-920 (the "*Oath* Action"): Oath Holdings Inc. and Oath Inc. (collectively, "Oath").

Arendi asserted one or more of the following five patents against each Defendant: U.S.

Patent Nos. 6,323,853 (the "'853 patent"), 7,496,854 (the "'854 patent"), 7,917,843 (the "'843

patent"), 7,921,356 (the "'356 patent"), and 8,306,993 (the "'993 patent"). These patents are

entitled "method, system and computer readable medium for addressing handling from" either "a

computer program" or "an operating system."

1

These cases were stayed between 2014 and 2018, as the parties engaged in multiple *inter partes* review ("IPR") proceedings before the Patent Trial and Appeal Board ("PTAB"). After these IPR proceedings and the appeals from them concluded, the only remaining patent asserted in any of the cases is the '843 patent.[1]

The *Apple* Action, the *Samsung* Action, and the *Microsoft Mobile* Action have settled. (*See* C.A. No. 12-1596 D.I. 421; C.A. No. 12-1598 D.I. 103; C.A. No. 12-1599 D.I. 204) The *HTC* Action is stayed pending the outcome of the *Google* Action. (*See* C.A. No. 12-1600 D.I. 195 at 4)

Pending before the Court are a total of 36 motions filed by the parties in the six remaining active cases, consisting of 21 motions to exclude expert testimony ("*Daubert* motions"); 14 motions for summary judgment; and a motion for leave to file supplemental infringement contentions, re-open discovery, and file a supplemental brief. (C.A. No. 12-1595 D.I. 256, 260, 263, 266, 268, 270, 333; C.A. No. 12-1597 D.I. 190, 193, 195, 200, 203, 207; C.A. No. 12-1601 D.I. 265, 268, 271, 277, 279, 282; C.A. No. 12-1602 D.I. 223, 226, 230, 231, 236, C.A. No. 13-919 D.I. 269, 272, 275, 281, 283, 286; C.A. No. 13-920 D.I. 233, 236, 238, 240, 241, 246)

The Court has considered the voluminous briefs and other materials submitted by the parties in connection with this large number of motions. The Court also held a consolidated hearing on July 29, 2021, in which the Court heard oral argument on the pending motions in all six cases. (C.A. No. 12-1595 D.I. 346; C.A. No. 12-1597 D.I. 271; C.A. No. 12-1601 D.I. 378; C.A. No. 12-1602 D.I. 294; C.A. No. 13-919 D.I. 385; C.A. No. 13-920 D.I. 319) ("Tr.")

---

[1] The details of these IPR proceedings and their respective outcomes are documented in a joint status report filed on August 6, 2018, docketed in each of the cases. (*See, e.g.*, C.A. No. 12-1595 D.I. 81)

2

This memorandum opinion will address the following 11 motions:

*Daubert* motions:

- Arendi's motion to exclude portions of Dr. Michael Shamos' expert report (C.A. No. 12-1597 D.I. 190)

- Arendi's motions to exclude portions of Dr. Martin Rinard's expert report (C.A. No. 12-1601 D.I. 265; C.A. No. 13-919 D.I. 269)[2]

- Arendi's motions to exclude portions of Mr. Monty G. Myers' expert report (C.A. No. 12-1602 D.I. 223; C.A. No. 13-920 D.I. 233)

Motions for summary judgment:

- LG's motion for summary judgment of non-infringement by the Rebel 4 accused products (C.A. No. 12-1595 D.I. 263)

- BlackBerry's motion for summary judgment of non-infringement (C.A. No. 12-1597 D.I. 195)

- Motorola's motion for summary judgment of non-infringement (C.A. No. 12-1601 D.I. 271)

- Sony's motion for summary judgment of non-infringement (C.A. No. 12-1602 D.I. 231)

- Google's motion for summary judgment of non-infringement (C.A. No. 13-919 D.I. 275)

- Oath's motion for summary judgment of non-infringement (C.A. No. 13-920 D.I. 240).

## I.  LEGAL STANDARDS

### A.  *Daubert* And Federal Rule Of Evidence 702

In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court

explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in

---

[2] Arendi has filed separate *Daubert* motions challenging Dr. Rinard in the *Motorola* Action and in the *Google* Action, but the parties' briefs filed in connection with those two motions are essentially identical.  Thus, the Court will address these two motions together.

order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." The rule requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). There are three distinct requirements for admissible expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See generally Elcock v. Kmart Corp.*, 233 F.3d 734, 741-46 (3d Cir. 2000). Rule 702 embodies a "liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). Motions to exclude evidence are committed to the Court's discretion. *See In re Paoli R. R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

## B. Summary Judgment And Federal Rule Of Civil Procedure 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

4

support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks and emphasis omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

5

## II.   DISCUSSION

### A.   *Daubert* Motions

#### 1.   Shamos

Arendi seeks to exclude portions of Dr. Shamos' expert report that are purportedly "inconsistent with the Court's claim construction." (C.A. No. 12-1597 D.I. 191 at 2)  The portions at issue relate to the claim term "to determine if the first information is at least one of a plurality of types of information that can be searched for." (*Id.* at 3)  The Court has construed this claim term as:

> to determine if the first information belongs to one or more of several predefined categories of identifying information (e.g., a name) or contact information (e.g., a phone number, a fax number, or an email address) that can be searched for in an information source external to the document.

(*Id.* D.I. 125 at 13-15)  In his report, Dr. Shamos opines that the claim term is not met because the Accused Devices "do not perform any analysis to determine whether the first information 'can be searched for . . . .'" (*Id.* D.I. 192 Ex. 1 ¶ 69; *see also id.* ¶ 133 ("[The Accused Applications] do not determine whether any information at all 'can be searched for . . . .'"))

The Court agrees with Arendi and will grant its *Daubert* motion.  Under the Court's construction, an infringing product must analyze to determine, while a document is being displayed, whether the first information "belongs to one or more of several predefined categories of identifying information . . . or contact information."  While the eligible "predefined categories" of information must be categories "that can be searched for in an information source external to the document," the Court's construction does not require that the searchability determination of the first information must be made by the accused infringing products while performing this step of the claimed process.  The contrary interpretation of the term would

6

effectively read the word "predefined" out of the Court's construction. In other words, "the phrase 'that can be searched for' modifies the allowable 'predefined categories' and does not specify a distinct determination to be made." (*Id.* D.I. 191 at 4) It follows that Dr. Shamos is attempting to impose an additional limitation not in the claims and his opinions on this point must be excluded. *See Personalized User Model, L.L.P. v. Google Inc.*, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014) (excluding expert report for failure to apply Court's claim constructions).

### 2. Rinard[3]

#### a. "Determine If The First Information Is At Least One Of A Plurality Of Types Of Information That Can Be Searched For"

For the same reasons provided in connection with Arendi's *Daubert* motion regarding Dr. Shamos (*see supra* II.A.1), the Court will grant this portion of Arendi's motion (C.A. No. 12-1601 D.I. 266 at 3-7).[4] Dr. Rinard is precluded from testifying that the Accused Devices or Accused Apps do not satisfy the claim limitation because they do not determine the searchability of the first information.

---

[3] Motorola and Google contend that Arendi's *Daubert* motion is untimely, prejudicial, and fails to address the *Pennypack* factors. (*See* C.A. No. 12-1601 D.I. 334 at 16-18; *see also* Tr. at 64) The Court disagrees. Arendi's *Daubert* motion was timely filed pursuant to the scheduling order. Motorola and Google cite no authority supporting the suggestion that a *Daubert* motion seeking to exclude expert opinions on reliability grounds must address the *Pennypack* factors.

[4] During the claim construction stage of these cases, Arendi "argued that the claim language was clear as to *where* the search can be performed for purposes of the determining step." (C.A. No. 12-1601 D.I. 334 at 6-7) (emphasis added) Arendi did not advocate for the position that the claimed process requires a searchability determination. Hence, Arendi has not been inconsistent, as Motorola and Google unpersuasively contend.

7

### b.   "Analyzing, In A Computer Process, First Information In A Document"

Arendi seeks to exclude portions of Dr. Rinard's report in which he opines that, to establish infringement, Arendi must show that the "analyzing" step is performed on the alleged "first information" and not on any additional information. (*See id.* D.I. 266 at 7-9; *see also id.* D.I. 267 Ex. 1 ¶¶ 395-412) The Court will grant Arendi's motion.

Dr. Rinard has failed to apply the plain and ordinary meaning of the claim term, which no party asked the Court to construe. The term does not require analyzing *only* the first information in a document. Instead, analysis of other information in addition to the first information – including "text that includes first information" or "passages encompassing first information" (*id.* D.I. 334 at 9-10) – does not fall outside of the claim scope. In other words, this claim limitation is satisfied when the first information in a document is analyzed, regardless of whether other information is also analyzed.[5]

Dr. Rinard has also impermissibly advanced his own claim construction in his expert report. He attempts to impose his own construction of this term by relying on a purported "disclaimer" made during prosecution. (*See id.* D.I. 267 Ex. 1 ¶¶ 395-97) This is not a task for an expert witness. *See generally Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[I]t is improper to argue claim construction to the jury.").

### c.   "Performing An Action Using At Least Part Of The Second Information"

Arendi seeks to exclude a portion of Dr. Rinard's expert report which opines that actions involving merely display of second information do not satisfy this claim element. (*See* C.A. No.

---

[5] Contrary to Motorola and Google's contention (*see, e.g.*, C.A. No. 12-1601 D.I. 334 at 10-11), the Court's construction of "first information" does not suggest the analysis is limited solely to the first information.

12-1601 D.I. 266 at 9-11; *see also id.* D.I. 267 Ex. 1 ¶¶ 327-41)  This portion of Arendi's motion will also be granted.

The Court agrees with Arendi that Dr. Rinard has imposed his own construction on this unconstrued claim term, rather than applying its plain and ordinary meaning.  In his expert report, Dr. Rinard purported to apply canons of claim construction (*see id.* ¶ 333); he also reads limitations from specification embodiments into the claim (*see id.* ¶ 334) and cites to the prosecution history (*see id.* ¶ 335).  In the end, he adopts a claim construction that impermissibly narrows the term's plain and ordinary meaning.  Therefore, Dr. Rinard is precluded from testifying that the Accused Devices and Accused Apps do not infringe because they merely display the second information.

### d.  Whether "Performing An Action" Must Occur In The "First Computer Program"

Arendi seeks to exclude another portion of Dr. Rinard's expert report, in which he opines that the claim limitation "performing an action using at least part of the second information" must occur within the first computer program. (*See id.* D.I. 266 at 12-13; *see also id.* D.I. 267 Ex. 1 ¶¶ 352-73)  Given Motorola and Google's clarification and assurance that Dr. Rinard █████
████████████████████████████████████████████████████████
████████████████████████████████ (*id.* D.I. 334 at 16), this portion of

Arendi's motion will be denied as moot.[6]

---

[6] To the extent Arendi contends that Dr. Rinard has failed to disclose in his report his opinion that ████████████████████████████████████████████
████████████ (C.A. No. 12-1601 D.I. 358 at 9; *see also id.* D.I. 334 at 15), this is an issue that can be presented in the pretrial order and/or at trial.  It is not a basis for granting a *Daubert* motion.

### 3. Myers

For the same reasons provided in connection with Arendi's *Daubert* motion regarding Dr. Shamos (*see supra* II.A.1), the Court will grant this portion of Arendi's motion (C.A. No. 12-1602 D.I. 224 at 2-5). Mr. Myers is precluded from testifying that the Accused Devices or Accused Apps do not satisfy the claim limitation because they do not determine the searchability of the first information.

### B. Motions For Summary Judgment

#### 1. Google's Motion For Summary Judgment Of Non-Infringement

Google moves for summary judgment of non-infringement on the grounds that its Accused Apps do not satisfy several claim limitations: (1) "document" (*see* C.A. No. 13-919 D.I. 276 at 16-22); (2) "determine if the first information is at least one of plurality of types of information that can be searched for" (*see id.* at 23-27); and (3) "providing an input device configured by the first computer program" and "in consequence of receipt by the first computer program of the user command from the input device" (*see id.* at 27-40).

##### a. "Document"

###### i. Linkify And Smart Linkify

Google first contends that summary judgment of non-infringement should be granted with respect to the Accused Apps operating in conjunction with the Linkify and the Smart Linkify functionalities.[7] (*See id.* D.I. 276 at 18-19) According to Google, since these functionalities "only operate on text that is *not* editable" (*id.* at 18), the Accused Apps operating

---

[7] These Accused Apps include: Google Messages, Calendar, Hangouts, Tasks, Docs, Slides, and Sheets. The specific date ranges of these apps operating in conjunction with Linkify and Smart Linkify are detailed in an appendix attached to Google's reply brief. (*See* C.A. No. 13-919 D.I. 276 at 18; *id.* D.I. 370 App'x 1)

in conjunction with them cannot meet the claim limitation "while the document is being displayed, analyzing . . . first information from the document." In Google's view, under the Court's claim construction, the term "document" must be "a word processing, spreadsheet, or similar file *into which text can be entered*." (*Id.* D.I. 143 at 5) (emphasis added)

During the consolidated hearing, Arendi confirmed that there is no dispute that Linkify and Smart Linkify work only in conjunction with non-editable files. (*See* Tr. at 36) Arendi contends, however, that "document[s]" need not be editable "throughout the entire claim, [and] throughout the entire process." (*Id.* at 27) According to Arendi, the files analyzed by the Accused Apps operating in conjunction with Linkify and Smart Linkify fall within the scope of "document[s]" because "text can be entered into each type of document at issue." (C.A. No. 13-919 D.I. 345 at 13-16) The editability requirement is satisfied, in Arendi's view, "as long as at least at one point in the past, it was a file into which text can be entered." (Tr. at 32)

Arendi's understanding of the claim scope is incorrect. The Court has construed "document" as "a . . . file into which text can be entered," not a file into which text can be entered *at some point*. The "document" of the claim limitation must remain a "document" – that is, a "file into which text can be entered" – "while the document is being displayed." It must likewise remain a "document" – again, a "file into which text can be entered" – while the Accused App is "analyzing . . . first information from the document." These limitations require that the document remain editable at least when it is displayed and analyzed. Since there is no dispute that Linkify and Smart Linkify do not work on editable files, there is also no dispute that the Accused Apps operating in conjunction with Linkify and Smart Linkify do not satisfy these claim limitations.

11

Arendi's arguments to the contrary are unpersuasive. Arendi insists that the Court should "recognize[] that . . . the characteristics of a claimed element can change over the course of a claim." (*Id.* at 32) Thus, according to Arendi, "if a document begins as a file into which text can be entered and then . . . becomes non-editable or read only, . . . that [does not] negate[] the fact that it is a document." (*Id.* at 31) By so arguing, Arendi essentially asks the Court to depart from its construction of a claim term and apply different meanings to the same term throughout a claim based on the purported changes of "characteristics of a claimed element." Arendi does not cite any authority to support this approach.

In a further attempt to support its position, Arendi refers to the opinion of its expert witness, Dr. Smedley, who opines that a person of ordinary skill in the art ("POSA") "would understand the Court's construction to refer to classes of documents, as reflected by the Court's reference to a 'word processing, spreadsheet, or similar file'" and "would not dice this category further" into editable or non-editable files "at a given moment." (C.A. No. 13-919 D.I. 347 Ex. B ¶ 163; *see also id.* D.I. 345 at 15) This portion of Dr. Smedley's opinion does not create a genuine dispute of material fact as it only accounts for a part of the Court's construction – that the "document" is "a word processing, spreadsheet, or similar file" – and ignores the part of the construction requiring a document to be a "file into which text can be entered."

Arendi also points to the Court's opinion in *Arendi S.A.R.L. v. HTC Corp.*, 2020 WL 7360155 (D. Del. Dec. 15, 2020). In that decision, the Court stated that, with respect to the '843 patent, it no longer believed that the asserted claim "require[d] that the second information be used to perform an action *in the first program.*" *Id.* at *2. In Arendi's view, that statement negated the requirement that the "document" must remain editable and allow the user to insert the "second information" into the document. (*See* C.A. No. 13-919 D.I. 345 at 15-16; *see also*

12

Tr. at 27-29) The Court disagrees. The Court's construction that "[a] 'document' as used here must be editable" (C.A. No. 13-919 D.I. 143 at 8) is not predicated exclusively on the notion that the user must be able to insert information back into the document after the analysis occurs. Instead, the Court explained that "the term 'document' must be construed consistent with the patents' repeated and consistent requirement in the specification that documents be editable," including that "the patent's definition of the term – 'word processors, spreadsheets, etc.' – is necessarily limited to computer programs in which a user can enter data." (*Id.* at 8-9)

In sum, there is no genuine dispute of material fact that the Accused Apps operating in conjunction with Linkify and Smart Linkify cannot infringe the '843 patent. Accordingly, Google's motion for summary judgment of non-infringement will be granted with respect to the Accused Apps operating in conjunction with Linkify and Smart Linkify.

### ii.     Chrome And News

Google next contends that summary judgment of non-infringement should be granted with respect to the Chrome and the News apps because "Arendi has no evidence to show the ability of a user to edit Chrome and News webpages." (*Id.* D.I. 276 at 19-20)

There is a genuine dispute of material fact over whether a POSA would understand the items displayed by Chrome and News to be files "into which text can be entered." With respect to Chrome, Arendi's expert, Dr. Smedley, provides multiple examples in his report in which the content of a webpage displayed by Chrome can be edited. (*See id.* D.I. 347 Ex. A ¶ 72; Ex. B ¶¶ 155, 160 n.108; *see also id.* D.I. 345 at 14-15) As to News, Dr. Smedley explained that "textual content of news articles is retrieved from a remote server and entered into a news item for display." (*Id.* D.I. 347 Ex. A ¶ 102) In his opinion, then, the news item satisfies the editability requirement because a POSA would understand the phrase "into which text can be entered" to

13

require the "ability to load text into the objects that constitute the electronic document." (*Id.* Ex. B ¶¶ 153-54) Although Google contends that Dr. Smedley's opinion would "render the Court's construction, 'into which text can be entered,' meaningless" (*id.* D.I. 370 at 7), the Court's construction does not restrict the manner in which text can be entered into a document.

Thus, Dr. Smedley's opinion creates a genuine issue of material fact as to whether Chrome and News satisfy the "document" element. This portion of Google's motion will be denied.

### iii. "Transitory Data Entry Fields"

Google also contends that summary judgment of non-infringement is warranted with respect to ten Accused Apps[8] and the Accused Devices using those apps because "Arendi accuses only transitory data entry fields . . . of being the 'document.'" (*Id.* D.I. 276 at 20) In Google's view, the transitory interfaces are not documents because "they are not 'word processor, spreadsheet or similar file[s].'" (*Id.* at 21)

The Court will deny this portion of Google's motion. There is a genuine dispute of material fact as to whether the data entry interfaces in the Accused Apps at issue in this motion are "word processor, spreadsheet or similar files." Arendi's expert, Dr. Smedley, opines that a POSA would understand that the data entry interfaces in each of the Accused Apps at issue are "word processor, spreadsheet or similar files." (*Id.* D.I. 345 at 17-21; *see also, e.g., id.* D.I. 347 Ex. B ¶¶ 176-78)

Pointing to Arendi's statements trying to distinguish prior art during the prosecution and the IPR proceeding of a related patent, Google counters that "Arendi and its experts repeatedly

---

[8] The ten Accused Apps are Google Messages, Chrome, Calendar, Contacts, Hangouts, Tasks, Docs, Slides, Sheets, and News. (C.A. No. 13-919 D.I. 276 at 20)

14

admitted that user interfaces and data entry fields used merely to accept transitory text are not 'document' within the '843 patent." (*Id.* D.I. 276 at 21) However, Dr. Smedley explains that those statements are "irrelevant" to any of the data entry interfaces in the Accused Apps because the purported "transitory data entry fields" in the prior art "are not akin to the documents" identified in his expert reports. (*Id.* D.I. 345 at 21-23; *see also id.* D.I. 347 Ex. B ¶¶ 167-69) Thus, whether the transitory data entry fields in the Accused Apps constitute "document[s]" presents a genuine dispute of material fact to be resolved by the jury.

> **b.  "Determine If The First Information Is At Least One Of A Plurality Of Types Of Information That Can Be Searched For"**

Google contends that the Court should grant summary judgment of non-infringement as to all Accused Products because none of the Accused Products "analyze to determine whether identified information is of a type that 'can be searched for' on a user's device." (*Id.* D.I. 276 at 23) Arendi does not dispute Google's characterization of how the Accused Products operate. (*See* Tr. at 69) Instead, it argues that the Court's construction of this claim term does not require the Accused Products to perform "an *additional* analyzing step" to determine the searchability of the first information. (C.A. No. 13-919 D.I. 345 at 25) For the reasons explained in connection with the Court's grant of Arendi's *Daubert* motion to exclude portions of Dr. Rinard's opinions regarding this claim limitation (*see supra* II.A.2.a), the Court finds that the asserted claim does not require that the searchability determination of the first information be made by the Accused Products while performing this step of the claimed process.[9] It follows that this portion of Google's motion for summary judgment must be denied.

---

[9] Google also argues that Arendi's Rule 30(b)(6) witness, Mr. Hedloy, and its invalidity expert, Dr. Sacerdoti, "admitted and acknowledged that there is a material difference between merely determining that information is of a particular type . . . and determining that the information is of a type 'that can be searched for in an information source external to the document.'" (C.A. No.

     c.     **"Providing An Input Device Configured By The First Computer Program" And "In Consequence Of Receipt By The First Computer Program Of The User Command From The Input Device"[10]**

Google contends the Court should grant summary judgment of non-infringement as to 12 of the 13 Accused Apps ██████████████ because: (1) the alleged "first computer program" does not "set up the input device for use by the user" (*id.* D.I. 276 at 34-39); and (2) the alleged "first computer program" does not "receive, process and act on the user command from the alleged input device" (*id.* at 39-40). With respect to the first issue, Google contends that the "input devices" are ██████████████████████████████████████ ████████████████████████████ and not ██████████████ ████, which is what Arendi identifies as the "first computer program." (*See id.* at 34-35) Google explains that "[t]he Android OS Framework code is separate from the code for each Accused App; ████████████████████████████████████████ ██████████████████████████████████ (*Id.* D.I. 370 at 15) With respect to the second issue, Google argues that "██████████████████████████ . . . undisputedly does not receive, process or act on any user command from the 'input device'" and

---

13-919 D.I. 276 at 24-26) The Court agrees with Arendi that Mr. Hedloy and Dr. Sacerdoti's statements, at most, confirm that the information must belong to a category that "can be searched for;" these statements do not establish that the determination of whether the information "can be searched for" must be performed by the infringing products. (*See id.* D.I. 345 at 27-29)

[10] The Court construed the term "providing an input device configured by the first computer program" as "providing an input device set up by the first computer program for use by the user." Neither party asked the Court to construe the term "in consequence of receipt by the first computer program of the user command from the input device." Relatedly, the Court also construed the term "computer program" as "a self-contained set of instructions, as opposed to a routine or library, intended to be executed on a computer so as to perform some task." (C.A. No. 13-919 D.I. 143 at 11-12; *id.* D.I. 144 at 1-2)

16

that it is "████████████████████, working with the Intent mechanism," that "receives any command and processes that command to launch other programs." (*Id.* D.I. 276 at 39)

Arendi responds that the ███████████ that purportedly set up the "input devices" are not ████████████████████████████ and that the Accused Apps ███████████ ████████████████████████████████████████. (*Id.* D.I. 345 at 31-32) Arendi also argues that ████████████████████████████████████ ████████████████████████████████ (*Id.* at 33) Arendi's position is supported by its expert, Dr. Smedley, who opines in his report that "[o]ne of ordinary skill in the art would understand a 'computer program' – consistent with the Court's construction and the specification of the patent – to include the methods and classes imported into and invoked by the first computer program – regardless of whether those methods and classes are defined in application-specific code or originate in shared libraries." (*Id.* D.I. 347 Ex. B ¶¶ 97-109) In particular, with respect to the requirement that the "computer program" must be a "set of instructions" that are "self-contained," Dr. Smedley explains that ███████████████████ ████████████████████████████████████████████████ ████████████████████ (*Id.* ¶ 99) Based on what a "computer program" encompasses, Dr. Smedley concludes that the Accused Apps "provide[] an input device responsive to a user command," and that "this component" of the Accused Apps receives the user's command and initiates a response. (*See, e.g., id.* Ex. A App'x ¶¶ 28, 67, 90, 104, 136, 160, 185, 210, 231, 263, 277)

In the Court's view, there is a genuine dispute of material fact as to whether the "first computer program" ██████████████ provides an "input device" and receives the user

command from that "input device." The Court will, therefore, deny summary judgment of non-infringement based on these claim limitations.

Google insists that Arendi's infringement position "directly contradicts its prosecution arguments distinguishing prior art." (*Id.* D.I. 370 at 18) In particular, Google contends that the "separateness" between █████████████████████████████████ ███████ – including the functionalities that purportedly set up the "input devices" – is "strikingly similar" to the architectures of several prior art systems which Arendi has attempted to distinguish during the prosecution and the IPR proceedings. (*See id.* D.I. 276 at 36) However, as Arendi explains, its earlier representations were made in the context of either a different construction of the claim term "computer program" or in connection with claim limitations not present in the '843 patent. (*See id.* D.I. 345 at 37-39) Arendi also denies that it ever represented that the prior art systems identified by Google worked exactly as the ██████████ in this action do. (*See, e.g., id.* at 37, 38 nn.11, 12) At best for Google, this issue presents another genuine dispute of material fact, precluding summary judgment.

In sum, Google's motion for summary judgment of non-infringement will be granted with respect to any Accused Apps operating in conjunction with Linkify and Smart Linkify, and will be denied with respect to all other aspects.

**2.    LG's Motion For Summary Judgment Of Non-Infringement By The Rebel 4 Accused Products**

LG contends it is entitled to summary judgment of non-infringement with respect to the Rebel 4 Accused Products, focusing on specific functionalities and apps operating on these products: (1) Linkify (*see* C.A. No. 12-1595 D.I. 264 at 5-7); (2) Google apps (*see id.* at 7-8); and (3) the Smart Text Selector ("STS") functionality (*see id.* at 8-9). LG relies heavily on the opening brief filed in connection with Google's motion for summary judgment of non-

18

infringement and clarifies in its reply brief that it "does not rely on *evidence* from the

Arendi/Google litigation, but the expected *judgment of non-infringement* regarding various

infringement theories in the Arendi/Google litigation." (*Id.* D.I. 321 at 1) The Court

understands that LG seeks summary judgment of non-infringement to the extent the Court grants

Google's motion for summary judgment of non-infringement.

Arendi responds that LG's references to arguments and evidence not in the record of *this*

case cannot support summary judgment (*see id.* D.I. 299 at 5-7), and that LG's non-infringement

argument ignores Arendi's evidence (*see id.* at 7-19).

The Court concludes that LG's reliance on the *Google* Action does not prevent the Court

from granting LG's motion with respect to the Accused Apps operating in conjunction with the

Linkify functionality. LG has cited the record in *this* action to support the pending motion. For

example, LG relies on the reports of its expert, Dr. Rosing, to show that Linkify is a functionality

"provided by Google as part of the Android operating system." (*Id.* D.I. 264 at 4; *see also id.*

D.I. 265 Ex. A ¶¶ 77, 78; Ex. B at 29-34, 45-51) LG also cites Dr. Rosing's report to prove that

"[t]here is no dispute that Linkify only runs in conjunction with non-editable Android text

'views' called by LG Email and LG Calendar." (*Id.* D.I. 264 at 4; *see also id.* D.I. 265 Ex. A ¶¶

110-18, 171-78) During the consolidated hearing, Arendi also confirmed that there is no dispute

that the Linkify functionality only works in conjunction with files in non-editable mode. (*See* Tr.

at 36)

Thus, under the Court's construction of "document," there is no genuine dispute that the

Accused LG and Google Apps operating in conjunction with Linkify cannot infringe the asserted

claims of the '843 patent. Accordingly, consistent with the Court's finding and for the same

reasons provided in connection with Google's motion for summary judgment of non-

infringement (*see supra* II.B.1), the Court will grant LG's motion for summary judgment of non-infringement with respect to the Accused LG and Google Apps operating in conjunction with Linkify on the Rebel 4 Accused Products.

Since the Court is denying Google's motion for summary judgment in all other respects, it will also deny LG's motion in all other respects.

### 3. BlackBerry's Motion For Summary Judgment Of Non-Infringement

BlackBerry has raised multiple grounds for summary judgment of non-infringement: (1) the Accused Applications are not "computer program[s]" (*see* C.A. No. 12-1597 D.I. 196 at 5-7) (2) the "input device" is not configured by the "first computer program" (*see id.* at 7-10); and (3) there is no evidence that BlackBerry or its customers have practiced the asserted method claims (claims 1 and 8 of the '843 patent) in the United States (*see id.* at 10-13).

#### a. "Computer Program"

The Court construed the claim term "computer program" as "a self-contained set of instructions, as opposed to a routine or library, intended to be executed on a computer so as to perform some task." (*Id.* D.I. 125 at 11-12) BlackBerry contends that "[n]one of the Accused Applications are 'computer program[s]' as construed by the Court because all of the Accused Applications rely on BlackBerry's Java SDK library that is external to the Accused Applications themselves." (*Id.* D.I. 196 at 5) In BlackBerry's view, "reliance on an outside program, API ["application programming interface"], or library necessarily means that the first computer program is not 'self-contained,'" and, thus, the Accused Applications are not "computer program[s]." (*Id.*)

The record reveals a genuine dispute of material fact as to whether a "computer program," as construed by the Court, would be understood by a POSA as being able to rely on

external libraries. Although "a routine or library" cannot itself be a "computer program," the Court's claim construction is silent on the issue of whether a "computer program" can rely on, invoke, or incorporate a routine or library within its "self-contained set of instructions."

Arendi's expert, Dr. Levi, opines that "one of ordinary skill in the art would well understand computer programs (i.e., 'self-contained set[s] of instructions . . . intended to be executed on a computer so as to perform some task') incorporate numerous libraries and routines." (*Id.* D.I. 197 Ex. O ¶ 24) Dr. Levi added during deposition that a computer program can "contain" an external library by "invok[ing] and incorporate[ing]" it. (*Id.* Ex. N at 39-40) Thus, just because the Accused Applications rely on the Java SDK library that is external to the Accused Applications does not lead to the inevitable conclusion that these Accused Applications are not "computer program[s]" as construed by the Court.[11]

Hence, the Court will deny this portion of BlackBerry's motion.

### b.  "Input Device" Configured By The "First Computer Program"

BlackBerry next contends it does not infringe any asserted claim of the '843 patent because in all of the Accused Applications, the alleged "input devices" are configured by "library software *external to* the first computer program." (*Id.* D.I. 196 at 7-8) This contention is related to the parties' dispute over whether a "computer program" can incorporate and invoke external libraries, a material issue on which the Court has found a genuine dispute. There is,

---

[11] BlackBerry contends that Arendi's own validity expert, Dr. Sacerdoti, admitted during his deposition in the *Google* and the *Motorola* Actions that "applications or other functionalities that are 'invoked' by the first computer system are not within the bounds of the first computer system itself." (C.A. No. 12-1597 D.I. 196 at 6-7) (citing *id.* D.I. 197 Ex. H at 180-82) Dr. Sacerdoti's deposition testimony is ambiguous; he did not unequivocally say that "a self-contained set of instructions" cannot invoke or incorporate external libraries. In any event, at most, Dr. Sacerdoti's testimony shows the existence of a genuine dispute of material fact; it does not provide a basis to grant BlackBerry summary judgment.

likewise, a genuine dispute of material fact as to whether the "input device" is configured by the "first computer program" in the Accused Applications. (*See, e.g., id.* D.I. 233 at 6-7; *id.* D.I. 235 Ex. A ¶¶ 114-22, 127)

### c.   Infringement Of The Method Claims

BlackBerry contends that summary judgment of no direct infringement is warranted with respect to the asserted method claims (claims 1 and 8 of the '843 patent) because "Arendi has no evidence that BlackBerry performed each step of the claimed methods in the United States." (*Id.* D.I. 196 at 10)  The Court disagrees.

Citing BlackBerry's internal documents and user manuals, Arendi's expert, Dr. Levy, opines that "BlackBerry has necessarily practiced the methods in claims 1 and 8 of the '843 Patent, including through, among other acts, product testing and trials performed to implement designs, ensure intended functionality, create user manuals, and/or generate marketing materials." (*Id.* D.I. 197 Ex. A ¶ 40 & nn.1, 2)  Dr. Levy's expert opinion, together with the content of the documents and manuals he cited to, creates a genuine dispute over the material fact of whether Blackberry has practiced the methods of claims 1 and 8.

With respect to Blackberry's contention that "Arendi has absolutely no evidence that any method steps were performed by BlackBerry within the United States" (*id.* D.I. 196 at 11-12), the Court agrees with Arendi that the email communications among BlackBerry employees regarding ███████████████████████████████████████████████████ ██████████████████████████████ – "would support a reasonable juror's conclusion that BlackBerry practiced the claimed methods in the U.S. and is sufficient to create a genuine factual dispute for trial." (*Id.* D.I. 233 at 17; *see also id.* D.I. 234 Ex. 6)  Thus, the Court will deny BlackBerry's motion for summary judgment of no direct infringement of claims 1 and 8.

BlackBerry further contends that Arendi has not provided any evidence to show a requisite underlying act of direct infringement of claims 1 and 8, as is required for it to prevail on its claims of indirect infringement. (*See id.* D.I. 196 at 12-13) Arendi neither responds to this challenge nor points to any record evidence that could demonstrate an underlying act of direct infringement by either BlackBerry's customers or anyone else. Thus, the Court will grant BlackBerry's motion for summary judgment of no indirect infringement of claims 1 and 8.

BlackBerry's motion for summary judgment of non-infringement with respect to claims 23 and 30 will be denied because it is premised on the assumption that Arendi asserts these two claims as method claims (*see id.* at 13), an assumption that Arendi rejects (*see id.* D.I. 233 at 17)

To summarize, BlackBerry's motion for summary judgment of non-infringement will be granted with respect to indirect infringement of claims 1 and 8, and will be denied with respect to all other aspects.

### 4.    Motorola's Motion For Summary Judgment Of Non-Infringement

The parties' briefs filed in connection with Motorola's motion for summary judgment of non-infringement are highly similar to the briefs filed in the *Google* Action. The Court need not repeat its reasoning to address the essentially identical issues here. For the same reasons provided in connection with Google's motion for summary judgment of non-infringement (*see supra* II.B.1), the Court will grant Motorola's motion for summary judgment of non-infringement with respect to the Accused Apps operating in conjunction with Linkify, and will deny the motion with respect to all other aspects.

### 5.    Sony's Motion For Summary Judgment Of Non-Infringement

Sony's motion for summary judgment of non-infringement presents two issues: (1) with respect to the Accused Devices operating on Google's Android system, Sony contends it is

entitled to summary judgment of non-infringement "to the extent the Court grants Google's motion for summary judgment of non-infringement" (C.A. No. 12-1602 D.I. 232 at 3-7); (2) with respect to the Accused Legacy Devices, Sony contends that Arendi's evidence of infringement is not based (as it should be) on the source code underlying Sony's proprietary operating systems and apps (*see id.* at 8-12).

### a. The Accused Android Devices

Arendi faults Sony for citing no evidence to support its motion and improperly relying on protected information from the *Google* Action. (*See id.* D.I. 262 at 8-11) As the Court has explained in the *LG* Action (*see supra* II.B.2), these purported problems will not prevent the Court from granting Sony's motion for summary judgment of non-infringement "to the extent the Court grants Google's motion." Contrary to Arendi's contention, Sony has cited evidence in the record of *this* action to support the pending motion. (*See id.* D.I. 282 at 3-4) For example, Sony relies on portions of the report of Arendi's expert, Dr. Levy, to demonstrate that the functionality of Linkify "is distributed with the Android framework and is then implemented within Sony's Accused Android devices." (*Id.* D.I. 232 at 3; *see also id.* D.I. 233 Ex. B ¶ 16) Sony also cites Dr. Levy's expert report and deposition testimony to prove that "Sony has neither changed nor modified the relevant Android framework installed on Sony's Accused Android Devices." (*Id.* D.I. 232 at 5; *see also id.* D.I. 233 Ex. B ¶¶ 17-19; Ex. D ¶ 194; Ex. E at 76-77) In light of Arendi's confirmation during the consolidated hearing that the Linkify functionality only works in conjunction with non-editable files (*see* Tr. at 36), Sony need not rely on protected information from the *Google* Action to prove that the Accused Apps operating in conjunction with Linkify cannot infringe the asserted claims of the '843 patent. Accordingly, consistent with the Court's finding and for the same reasons provided in connection with Google's motion for

24

summary judgment of non-infringement (*see supra* II.B.1), the Court will grant Sony's motion for summary judgment of non-infringement with respect to the Accused Apps operating in conjunction with Linkify on the Accused Android Devices.

### b.    The Accused Legacy Devices

Sony contends that summary judgment of non-infringement should be granted with respect to its Accused Legacy Devices because "Arendi has failed to meet its burden of proof." (C.A. No. 12-1602 D.I. 232 at 8)  Specifically, Sony contends that "Arendi's infringement contentions make no mention of or citation to the source code for the Accused Legacy Devices," and, instead, Arendi "only offers speculation as to these devices' operation by relying on what is visible on the screens or displays of the Accused Legacy Devices." (*Id.* at 8-10)

Arendi responds that, in this case, "proof of infringement does not require source code." (*Id.* D.I. 262 at 31-32)  Arendi points to Dr. Levy' expert report, in which he provides element-by-element explanations – relying on evidence generated by testing of the Accused Legacy Devices (but without source code analysis) – showing how, in his opinion, the Accused Legacy Devices do infringe the '843 patent. (*See id.* at 33-40; *see also id.* D.I. 233 Ex. D ¶¶ 98-130)

The Court concludes that Arendi has produced sufficient evidence to create a genuine dispute of material fact as to whether the Accused Legacy Products infringe the '843 patent. For example, in response to Sony's challenge that "analysis of the source code is critical to determine which entities perform which functions" (*id.* D.I. 232 at 11), Arendi points to Dr. Levy's expert report, which explains how he relies on device testing evidence, including how "the input devices are associated with and dependent on particular [user interface] elements of [the] computer programs," "the user must navigate to a link within a document displayed using the first computer program before [certain] menu items appear," and "the input devices are not

25

available when an analogous document is displayed . . . using other computer programs," all showing (in Dr. Levy's opinion) that the "input device" is set up by the "first computer program." (*See id.* D.I. 262 at 36-37; *see also id.* D.I. 233 Ex. D ¶ 275) In the Court's view, a reasonable jury could credit Dr. Levy's testing-based analysis and conclude that it is the "first computer program," rather than some other software program, that sets up the "input device."[12]

None of the cases cited by Sony (*see id.* D.I. 232 at 9) supports the proposition that an expert must review and analyze source code in order to opine on the issue of infringement in every case involving software. Thus, this portion of Sony's motion will be denied.

To summarize, Sony's motion for summary judgment of non-infringement will be granted with respect to the Accused Apps operating in conjunction with Linkify, and will be denied in all other aspects.

### 6. Oath's Motion For Summary Judgment Of Non-Infringement

Oath's motion for summary judgment of non-infringement raises multiple issues: (1) with respect to the Accused Apps operating on Google's Android system, Oath is entitled to summary judgment of non-infringement "to the extent that the Court rules for Google . . . on [its motion] for summary judgment of non-infringement" (C.A. No. 13-920 D.I. 242 at 7);[13] (2) Oath's

---

[12] Sony's reliance on Dr. Levy's deposition testimony to demonstrate Dr. Levy's inability to prove infringement without a source code analysis fails to provide a meritorious basis for summary judgment. (*See* C.A. No. 12-1602 D.I. 232 at 11) Dr. Levy testified that, in the context of the claim limitation "providing an input device configured by the first computer program," he would not know, without source code analysis, whether the code that performs that claimed function is "part of the in-line code" for the Accused Apps or is part of the operating system framework. (*See id.*) However, since the issue of whether the "first computer program" can incorporate and invoke framework libraries presents a factual dispute, Dr. Levy's inability to tell whether the code is an Accused App's in-line code or is part of the operating system framework (which is invoked by the Accused App) does not compel the conclusion that he cannot prove infringement. (*See id.* D.I. 262 at 38)

[13] With respect to Yahoo! Mail operating on Apple's iOS system, Oath requests that the Court grant its motion to the extent that Court rules for Apple on Apple's motion for summary

26

Accused Apps do not directly infringe the computer readable medium ("CRM") claim of the '843 patent (claim 23) (*see id.* at 11-14); and (3) Oath is entitled to summary judgment of no indirect infringement of claim 23 because Arendi's indirect infringement theory was disclosed too late and otherwise lacks evidentiary support (*see id.* at 14-16).[14]

### a.    The Accused Apps Operating On The Android System

Arendi contends that Oath improperly relies on protected information from the *Google Action* and cites no evidence in the record of its own case to support its motion with respect to the Accused Apps operating on Google's Android system. (*See id.* D.I. 277 at 8-10)  As the Court has explained in the *LG* and the *Sony* Actions (*see supra* II.B.2 and II.B.5.a), these issues will not prevent the Court from granting Oath's motion for summary judgment of non-infringement "to the extent the Court rules for Google."  Oath has cited record evidence in *this* action to support the pending motion. (*See id.* D.I. 304 at 2-3)  For example, Oath cites the report of Arendi's expert, Dr. Smedley, to prove that "code relating to Linkify is defined in libraries distributed with the Android framework" (*Id.* D.I. 243 Ex. C ¶ 12) and that "Android functionalities must be the same across all Android devices, no matter the device manufacturer, to ensure compatibility and meet the Android Compatibility requirements." (*Id.* D.I. 304 at 3; *see also id.* D.I. 243 Ex. C ¶ 15)  In light of Arendi's confirmation during the consolidated hearing that the Linkify functionality only works in conjunction with non-editable files (*see* Tr.

---

judgment of non-infringement. (*See* C.A. No. 13-920 D.I. 242 at 7)  After the *Apple* Action settled, the parties informed the Court that the release Arendi provided Apple also covers Oath's Yahoo! Mail app running on the iOS system. (*See id.* D.I. 321)  Thus, this portion of Oath's motion is moot.

[14] Oath also contends that it does not directly or indirectly infringe the method claim (claim 1) of the '843 patent.  During the consolidated hearing, Arendi represented that it was not asserting claim 1 against Oath. (*See* Tr. at 116)  Thus, this portion of Oath's motion is moot.

at 36), Oath need not rely on the protected information from the *Google* Action to prove that the Accused Apps operating in conjunction with Linkify cannot infringe the asserted claims of the '843 patent. Accordingly, consistent with the Court's finding and for the same reasons provided in connection with Google's motion for summary judgment of non-infringement (*see supra* II.B.1), the Court will grant Oath's motion for summary judgment of non-infringement with respect to the Accused Apps operating in conjunction with Linkify.

### b. Direct Infringement Of Claim 23

Oath contends it is entitled to summary judgment of no direct infringement of claim 23 of the '843 patent because Oath "does not make, sell, or offer to sell either the hardware (i.e. the smartphone) onto which the Accused Apps [are] downloaded or the underlying Android . . . framework code required to form and execute the functionalities of the patented system of claim 23." (C.A. No. 13-920 D.I. 242 at 11)

Claim 23 of the '843 patent is directed to "at least one non-transitory computer readable medium encoded with instructions which, when loaded on a computer," establish the process claimed in the method claims. ('843 patent at 12:40-42) A CRM claim is "a claim to a computer readable medium (e.g., a disk, hard drive, or other data storage device) containing program instructions for a computer to perform a particular process." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). In this case, it is not clear what CRM Arendi accuses Oath of infringing. Arendi repeatedly refers in its brief to "Oath's CRM," without clarifying what it means.[15] Arendi's expert, Dr. Smedley, opines in his expert report that

---

[15] Regarding the question of what the accused CRM is, Arendi's counsel stated at the consolidated hearing: "I don't know how you have software without some kind of storage device. It has to be stored somewhere." (Tr. at 115)

28

"[e]ach Accused Product is the requisite logic encoded on a non-transitory computer readable medium, having been copied to the non-transitory memory of an Android computer from the non-transitory memory of a server or 'master disk.'" (C.A. No. 13-920 D.I. 243 Ex. D ¶ 42) It appears, then, the accused CRM could be: (1) an Android computer's non-transitory memory; and/or (2) a server or "master disk" from which Oath's customers download the Accused Apps. Under either theory, however, there is no genuine dispute of material fact that Oath does not directly infringe claim 23 of the '843 patent.

Under the first theory, the Accused CRM is the memory of an Android computer. Arendi offers "no evidence that Oath makes, uses, or sells" any such CRM or any hardware (i.e. smartphone, etc.) having such CRM "with the Accused Apps preloaded or onto which they may be loaded." (*Id.* D.I. 304 at 4) Thus, under this theory, no reasonable factfinder could find that Oath directly infringes claim 23.

Under the second theory, the Accused CRM is the "server or 'master disk'" from which Oath's customers download the Accused Apps. The Court agrees with Oath that there is no genuine dispute of material fact that Oath's Accused Apps stored on the server or "master disk," when loaded on a computer, do not meet the limitations of claim 23. Citing the deposition testimony of Arendi's expert, Dr. Smedley, Oath correctly points out that "when any of the Accused [Apps] are downloaded from the application store onto a smartphone, only the programming code specific to the Accused [Apps] is downloaded, not the underlying Android . . . framework code." (*Id.* D.I. 242 at 12; *see also id.* D.I. 243 Ex. B at 101) Since Dr. Smedley's infringement report only concerns the performance of the Accused Apps with the underlying Android framework, Arendi has provided no evidence that the instructions encoded by the Accused Apps alone, without the underlying operating system frameworks, can practice the

29

process claimed in claim 23 when they are loaded on a computer.[16] It follows that there is no genuine dispute of material fact that Oath does not infringe claim 23 under the second theory, either.[17]

For these reasons, Oath's motion for summary judgment of non-infringement will be granted with respect to direct infringement of claim 23 of the '843 patent.

### c.    Indirect Infringement Of Claim 23

The Court will grant Oath's motion for summary judgment of no indirect infringement of claim 23. Arendi failed to timely disclose its indirect infringement theory. (*See id.* D.I. 242 at 14-16) It did not present its theory in its infringement contentions or expert report and only did so in its responsive summary judgment briefing. Relatedly, the record lacks sufficient evidence from which a reasonable factfinder could find that Oath induced or contributed to infringement of claim 23 of the '843 patent. (*See id.*)[18]

---

[16] Nor does Arendi point to any evidence that the server or "master disk" has the source code for the Android operating system framework.

[17] Arendi appears to argue that, under the second theory, the Accused Apps stored on the Accused CRM (server or "master disk") can establish the claimed processes when they are loaded on an Android device. (*See* C.A. No. 13-920 D.I. 277 at 25-26) The CRM claim, however, requires that the software instructions establish the claimed processes when "loaded on a computer," not when loaded on a computer pre-installed with an Android operating system framework. The cases relied on by Arendi do not help it. For example, in *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1202 (Fed. Cir. 2010), the Federal Circuit considered whether certain software infringed the asserted CRM claims where the infringing software was "locked" when sold, requiring a customer to purchase a separate key to activate the software. The Federal Circuit explained that since "it is undisputed that software for performing the claimed functions existed in the products when sold," the "fact that users needed to 'activate the functions programmed' by purchasing keys does not detract from or somehow nullify the existence of the claimed structure in the accused software." *Id.* at 1205. Here, by contrast, it is undisputed that the "software for performing the claimed functions" does not exist in the Accused Apps, because the Accused Apps do not contain the underlying operating system frameworks required for the ability to perform the claimed functions.

[18] "In order to succeed on claim of [induced infringement], the patentee must show, first that there has been direct infringement, and second, that alleged infringer knowingly induced infringement

30

For the foregoing reasons, Oath's motion for summary judgment of non-infringement will be granted in full.

## III.    CONCLUSION

An appropriate order follows.

---

and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (internal quotation marks omitted). "To establish contributory infringement, the patent owner must show . . . : 1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).